UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

M.E.S., INC. and GEORGE MAKHOUL,

        Plaintiffs,

  -v-

ELLA SNELL et al.,

        Defendants.

-------------------------------------------------------x



No. 10 Civ. 9513 (LTS)(JLC)

## MEMORANDUM OPINION AND ORDER

Plaintiffs M.E.S., Inc. ("MES") and George Makhoul ("Makhoul") (collectively, "Plaintiffs") bring this action against Defendants Ella Snell ("Snell"), Raynette Gurney ("Gurney"), Christopher Nastasi ("Nastasi"), and Anthony Levesanos ("Levesanos") (collectively, "Defendants"). Plaintiffs assert claims against Defendants in their individual capacities, pursuant to Bivens v. Six Unknown Named Defendants of Federal Bureau of Narcotics, 403 U.S. 388 (1971). Specifically, Plaintiffs allege that Defendants violated Plaintiffs' substantive due process rights under the Fifth Amendment by depriving Plaintiffs of property and liberty without due process of law, and violated Plaintiffs' First Amendment right to free speech. Additionally, Plaintiff Makhoul asserts New York law claims for injurious falsehood against all Defendants. Defendants have filed a motion pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss the Second Amended Complaint. The Court has considered thoroughly the parties' submissions, and for the following reasons, Defendants' motion is granted.

BACKGROUND

Unless otherwise noted, the following facts are alleged in the Second Amended Complaint ("SAC") and are taken as true for purposes of this motion practice. MES is a contractor specializing in designing and building complicated structures, such as laboratories, offices, and storage buildings for explosives, ordinance, and ammunition, as well as weapon testing facilities. (SAC ¶ 17.) Mr. George Makhoul is the president of MES. (SAC ¶ 9.) Defendant Ella Snell is employed as a Contracting Officer at the offices of the New York District of the U.S. Army Corps of Engineers (the "Corps"). (SAC ¶ 10.) Defendant Raynette Gurney is employed as Chief of Contracting for the North Atlantic Division of the Corps. (SAC ¶ 11.) Defendant Christopher Nastasi is an Administrative Contracting Officer at the offices of the New York District of the Corps. (SAC ¶ 12.) Defendant Anthony Levesanos is a Program Manager for the Corps, and managed the three construction projects described below. (SAC ¶ 13.)

Between September 19, 2003, and September 29, 2006, the Corps awarded MES three projects to be performed at the Picatinny Arsenal in Dover, New Jersey, under three separate contracts. (SAC ¶¶ 16, 18.)

Project I: The High Energy Propellant Formulation Facility

On September 23, 2003, the Corps awarded this project to a joint venture between MES and Hirani Engineering (the "Joint Venture"), for a sum of $16,549,000. (SAC ¶ 25.) Project I required MES to design and construct thirteen new buildings and renovate three existing buildings at the Picatinny Arsenal. (SAC ¶ 26.) The Project I contract incorporated the "Disputes" resolution clause of the Federal Acquisition Regulations ("FAR"), which provides that "all disputes arising under or relating to this contract shall be resolved under [the Contract Disputes Act of 1978]." 48 C.F.R. 52.233-1(a) - (b); (see also Project I Contract at 29,

Declaration of Bertrand Madsen, Exh. 1, July 29, 2011, ECF No. 28) (hereinafter "Madsen Decl.").

Several delays arose during the course of the project, and MES alerted Defendants to all such delays. (SAC ¶¶ 27-28.) Defendants required MES to perform work beyond the original scope of the project, despite knowing that sufficient funds did not exist to pay for that additional work. (SAC ¶¶ 29-31.) On November 4, 2008, the Corps terminated Project I for default. (Project I Termination Notice, Madsen Decl., Exh. 2.) At the time of the termination for default, Project I was 93% complete. (SAC ¶ 68.)

### Project II: The Explosives Research and Development Loading Facility

On February 11, 2005, the Corps awarded this project to MES for a sum of $7,262,975. (SAC ¶ 41.) Project II required MES to design and construct three new buildings at the Picatinny Arsenal and complete minor renovations to one existing building. (SAC ¶ 42.) The Project II contract included the same dispute resolution clause as the Project I contract. (Project II Contract at 14, Madsen Decl., Exh. 6.)

Several delays arose during the course of Project II, due in part to defective government issued specifications for the project. (SAC ¶ 43.) Defendants demanded that MES complete additional work for the project, despite knowing that funding did not exist to pay for this work. (SAC ¶ 44.) On December 22, 2008, the Corps terminated Project II for default. (Project II Termination Notice, Madsen Decl., Exh. 7.) At the time of the termination for default, Project II was 74% complete. (SAC ¶ 68.)

### Project III: The Pyrotechnics Research and Technology Facility

On September 29, 2006, the Corps awarded this project to MES for a sum of $10,628,832. (SAC ¶ 52.) The Project III contract required MES to construct a 473-foot long pyrotechnics research facility at the Picatinny arsenal, as well as a 136-foot long flare tunnel

attached to that facility. (SAC ¶ 53.) The Project III contract included the same dispute resolution clause found in the Project I and II contracts. (Project III Contract at 13, Madsen Decl., Exh. 11.) Once again, defective project specifications led to delays, which MES brought to the attention of Defendants and the Corps. (SAC ¶¶ 54-56.) MES was forced to perform additional work on the Project even though Defendants knew that there was no funding to compensate MES for that work. (SAC ¶¶ 56-60.) On March 5, 2008, the Corps terminated Project III for default. (Project III Termination Notice, Madsen Decl., Exh. 12.) At the time of the termination for default, Project III was 24% complete. (SAC ¶ 68.)

MES appealed the Corps' decision to terminate each of the three projects to the Armed Services Board of Contract Appeals (the "ASBCA"). (SAC ¶ 70.) In each of these appeals, MES stated that the ASBCA had jurisdiction over the appeal pursuant to the "Disputes" clauses of the three contracts and the Contract Disputes Act of 1978. (Project I Appellate Complaint ¶ 3, Madsen Decl., Exh. 5; Project II Appellate Complaint ¶ 1, Madsen Decl., Exh 10; Project III Appellate Complaint ¶ 3, Madsen Decl., Exh. 15.) MES argued that the projects' various delays were caused by the Corps' defective drawings and specifications and that the Corps' decision to terminate the three contracts was arbitrary and capricious. (Project I Appellate Complaint ¶¶ 137, 140, 146, Madsen Decl., Exh. 5; Project II Appellate Complaint ¶¶ 109, 112, Madsen Decl., Exh 10; Project III Appellate Complaint ¶¶ 61, 65, Madsen Decl., Exh. 15.)

On July 30, 2009, Safeco Insurance Company of America ("Safeco"), a commercial surety, filed a complaint in the United States District Court for the Eastern District of New York against MES and the Joint Venture. (Safeco Complaint, Madsen Decl., Exh. 16.) Safeco alleged that MES and the Joint Venture had breached indemnity agreements between the parties, entitling Safeco to assume ownership of the ASBCA appeals. (Id. ¶¶ 28, 32, 34, 78.) On

June 2, 2010, MES contacted the ASBCA to explain that the court in the parallel Safeco litigation had issued an order finding that Safeco had a right to collateral security under the indemnity agreements. (Madsen Decl., Exh. 17 at 2.) MES told the ASBCA that, in light of that ruling, it could not then pursue its ASBCA appeals because of its limited financial resources and the possibility that Safeco might exercise its right to take over the appeals. (Id. at 2 - 3.) MES requested that the ASBCA stay the appeals pending a resolution of Safeco's rights. (Id. at 3.) On June 3, 2010, the ASBCA instructed MES to update the board as to the status of the appeals pending the parallel litigation with Safeco. (Madsen Decl., Exh. 18.) MES responded to this request on August 3, 2010, informing the ASBCA that the litigation with Safeco had not been resolved and there were no new developments. (Madsen Decl., Exh. 19.) On August 5, 2010, the ASBCA wrote to the parties, proposing that the appeals be dismissed without prejudice because the dispute between MES and Safeco had not been resolved (Madsen Decl., Exh. 20) and, on September 10, 2010, the ASBCA dismissed MES' appeals without prejudice. (Madsen Decl., Exh. 21.)[1]

Plaintiffs brought the present action on December 22, 2010, alleging that Defendants violated the Anti-Deficiency Act by requiring MES to perform additional, unfunded work on the three Picatinny Arsenal contracts. The Anti-Deficiency Act prohibits a government

---

[1] The appeals were dismissed pursuant to ASBCA Rule 30, which provides that:
> In certain cases, appeals docketed before the Board are required to be placed in a suspense status and the Board is unable to proceed with disposition thereof for reasons not within [its] control . . . Where the suspension . . . may continue, for an inordinate length of time, the Board may, in its discretion, dismiss such appeals from its docket without prejudice to their restoration when the cause of suspension has been removed. Unless either party or the Board acts within three years to reinstate any appeal dismissed without prejudice, the dismissal shall be deemed with prejudice.

Rules of the Armed Services Board of Contract Appeals, May 11, 2011, available at http://www.asbca.mil/Rules/forms/Rules11May2011.pdf.

employee from authorizing an expenditure from, or creating or authorizing an obligation under, any appropriation or fund in excess of the amount available in the appropriation or fund unless authorized by law. 31 U.S.C. § 1341(a)(1)(A); (see also SAC ¶ 75.) The Act further provides that a government employee may not involve the government in any obligation to pay money before funds have been appropriated for that purpose. 31 U.S.C. § 1341(a)(1)(B). Plaintiffs further allege that Defendants improperly terminated MES for default on the three contracts in order to conceal their own violations of the Anti-Deficiency Act.

The financial impact and stigma of the three contract terminations have severely impacted MES' business, leaving the company unable to operate as a going concern. (SAC ¶¶ 82 - 83.) MES claims 1) that Defendants have, in violation of the Fifth Amendment, deprived it of its fundamental property interest in its continued economic and financial well-being; 2) that Defendants have deprived it of its fundamental liberty interest in protecting its reputation in order to compete for federal contracts; 3) that, by terminating MES' contracts in order to prevent MES from revealing Defendants' Anti-Deficiency Act violations, Defendants violated MES' First Amendment right to free speech; and 4) that Defendants have made false and malicious statements regarding MES and its president, Mr. Makhoul.

## DISCUSSION

Under Fed. R. Civ. P 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). When reviewing a Rule 12(b)(1) motion to dismiss, the court "must accept as true all material factual allegations in the complaint, but [may not] draw inferences from the complaint favorable to plaintiffs." J.S. v. Attica Central Schools, 386 F.3d 107, 110 (2d Cir. 2004). The plaintiff has the burden of

proving, by a preponderance of the evidence, that subject matter jurisdiction exists. <u>Makarova</u>, 201 F.3d at 113. In deciding a 12(b)(1) motion, the court may consider materials beyond the pleadings. <u>J.S.</u>, 386 F.3d at 110.

<u>Bivens Liability</u>

In <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971), a plaintiff who had been subjected to an illegal search and seizure sought damages against federal law enforcement officers. The Supreme Court noted that, though "the Fourth Amendment does not in so many words provide for its enforcement by an award of money damages for the consequences of its violation," money damages were nonetheless appropriate, as "where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." <u>Bivens</u>, 403 U.S. at 396 (internal quotations omitted). Since 1971, however, the Supreme Court has only recognized new <u>Bivens</u> actions twice, "in the context of an employment discrimination claim in violation of the Due Process Clause, and in the context of an Eighth Amendment violation by prison officials." <u>Arar v. Ashcroft</u>, 585 F.3d 559 (2d Cir. 2009) (internal citations omitted); <u>see also</u> <u>Wilkie v. Robbins</u>, 551 U.S. 537, 550 (2007) ("[I]n most instances we have found a Bivens remedy unjustified."); <u>Correctional Services Corp. v. Malesko</u>, 534 U.S. 61, 68 (2001) ("[W]e have consistently refused to extend <u>Bivens</u> liability to any new context or new category of defendants.").

Courts will not recognize a <u>Bivens</u> remedy when a plaintiff's conduct is already "governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States," and it would be "inappropriate [for courts] to supplement that regulatory scheme with a new judicial remedy." <u>Bush v. Lucas</u>, 462 U.S. 367, 368 (1983).

Furthermore, an administrative remedy's failure to "provide complete relief for the plaintiff," Bush, 462 U.S. at 388, does not compel recognition of a Bivens remedy. The question is "not what remedy the court should provide for a wrong that would otherwise go unredressed," Bush, 462 U.S. at 388, but rather "whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue." Id.

The Court reaffirmed this principle in Schweiker v. Chilicky, 487 U.S. 412 (1998), a case where plaintiffs brought a Bivens action alleging that government officials had denied them Social Security benefits, in violation of their due process rights. Plaintiffs' benefits were reinstated, but they sought consequential damages, which were not provided for by statute, for the physical, emotional, and material harms that resulted from the delayed receipt of their benefits. The Court in Schweiker refused to recognize a Bivens remedy, finding that:

> Here, exactly as in Bush, Congress has failed to provide for "complete relief": respondents have not been given a remedy in damages for emotional distress or for other hardships suffered because of delays in their receipt of Social Security benefits. The creation of a Bivens remedy would obviously offer the prospect of relief for injuries that must now go unredressed. Congress, however, has not failed to provide meaningful safeguards or remedies for the rights of persons situated as respondents were. Indeed, the system for protecting their rights is, if anything, considerably more elaborate than the civil service system considered in Bush.

487 U.S. at 425. The question in the present case, then, is not whether the applicable statutory remedy fails to address Plaintiffs' particular claims of damages arising from constitutional violations, but whether *any* statutory remedy exists for parties in Plaintiffs' position. This Court will not recognize Plaintiffs' Bivens action if Plaintiffs' conduct is already governed by a comprehensive remedial system.

The Contract Disputes Act is a Comprehensive Remedial System Within the Meaning of Bush v. Lucas

Defendants argue that Plaintiffs' Bivens claims are preempted by the Contract Disputes Act ("CDA"), 41 U.S.C. § 601 et seq. (West 2008). The CDA applies to any express or implied contract entered into by an executive agency for the procurement of property, services, or construction, alteration, repair or maintenance of real property. Id. § 602(a). "All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." Id. § 605(a). The contracting officer's decision on the claim is final and conclusive and not subject to review by any forum, tribunal, or Government agency, unless an appeal is timely commenced pursuant to the CDA. Id. § 605(b). A contractor may appeal a contracting officer's decision to an agency board of contract appeals within ninety days from the receipt of that decision, id. § 606, and the agency board is authorized to grant any relief that would be available to a litigant asserting a contract claim in the United States Court of Federal Claims. Id. § 607(d). An agency board's decision is final, except that a contractor may appeal the board's decision to the United States Court of Appeals for the Federal Circuit. Id. § 607(g)(1)(a). In lieu of appealing a contracting officer's decision to an agency board, a contractor may bring an action directly in the Untied States Court of Federal Claims. Id. § 609(a)(1).

While the courts of this Circuit have not addressed directly whether the CDA precludes plaintiffs from pursuing Bivens claims against federal employees, several other courts have held that it does. See, e.g., Evers v. Astrue, 536 F.3d 651, 661 (7th Cir. 2008) (dismissing Bivens claims arising from plaintiff's contract with the government because "Congress has provided government contractors with adequate relief for breaches of governmental contracts under the Contract Disputes Act"); Janicki Logging Co. v. Mateer, 42 F.3d 561, 564-65 (9th Cir.

1994) (dismissing Bivens claim arising from plaintiff's contract with the government because the CDA "is a complex procedural and substantive remedial scheme."); Kesler Enterprises v. U.S. Dep't of Agriculture, No. 4:10-CV-169-BLW, 2010 WL 4641360, at *4 (D.Idaho Nov. 4, 2010) (dismissing Bivens claim arising from plaintiff's contract with the government because the CDA is "an adequate statutory mechanism"); Advanced Materials v. Burgess, Civ. A. No. 94-2808, 1995 WL 25891, at *2 (E.D. La. Jan. 23, 1995) (dismissing Bivens claims arising from plaintiff's contract with the government because the CDA provides a "'fair, balanced, and comprehensive statutory system of legal and administrative remedies in resolving Government contract claims'") (quoting S. REP. NO. 95-1118 at 1 (1978), reprinted in 1978 U.S.C.C.A.N. 5235, 5235). Thus, a claim arising from Plaintiffs' CDA-covered contract with the government may not proceed as a Bivens action, as the CDA is "precisely the kind of mechanism," Janicki Logging, 42 F.3d at 565, that the Supreme Court has held to preclude such claims.

Plaintiffs' Action Arises is Covered by the CDA

In determining whether an action is "at its essence" a contract action, courts consider 1) "the source of the rights upon which the plaintiff bases its claim"; and 2) "the type of relief sought (or appropriate)." Megapulse, Inc. v. Lewis, 672 F.2d 959, 968 (D.D.C. 1982). The crux of Plaintiffs' complaint is that Defendants improperly terminated the three Picatinny Arsenal contracts, and so the complaint is appropriately covered by the CDA.[2] As a preliminary

---

[2] Even if Plaintiffs had asserted a constitutional claim, that claim would be precluded by the CDA, which requires that "*[a]ll* claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." § 605(a) (emphasis added); see also Kesler Enterprises, 2010 WL 4641360, at *5 ("the CDA encompasses 'all claims by a contractor against the government relating to a contract'; no exception is made for claims alleging unconstitutional conduct by a contracting officer. The Court is persuaded that when Congress indicated that 'all claims by a contractor against the government relating to a contract' were to be resolved according to the CDA, it

matter, each of the three contracts included a dispute resolution clause providing that "all disputes arising under or relating to this contract" would be resolved pursuant to the Contract Disputes Act. (See Project I Contract at 29, Madsen Decl., Exh. 1 (incorporating 48 C.F.R. 52.233-1); Project II Contract at 14, Madsen Decl., Exh. 6 (same); Project III Contract at 13, Madsen Decl., Exh. 11 (same).) After the contracts were terminated, MES appealed each termination to the ASBCA, pursuant to CDA procedure. In these appeals, MES conceded that the dispute at issue - the Corps' termination of the contracts - was subject to resolution under the terms of the CDA. (Project I Appellate Complaint ¶ 3, Madsen Decl., Exh. 5; Project II Appellate Complaint ¶ 1, Madsen Decl., Exh 10; Project III Appellate Complaint ¶ 3, Madsen Decl., Exh. 15.) Plaintiffs' appellate submissions to the ASBCA further confirm that the Corps' termination of the Picatinny Arsenal contracts is central to Plaintiffs' claim. In the Project I Appellate Complaint, for example, Plaintiffs argued that "the termination for default was . . . improper, arbitrary and unwarranted" and requested that the termination for default "be reversed and converted to a termination for convenience." (Project I Appellate Complaint ¶ 146, Madsen Decl., Exh. 5; see also Project II Appellate Complaint ¶¶ 109, 116, Madsen Decl., Exh. 10 ("the Corps' decision to terminate the contract for default was arbitrary and capricious" and requesting that the termination be converted to a termination for convenience); Project III Appellate Complaint ¶ 65, Madsen Decl., Exh. 15 (same).)

    Plaintiffs' attempts to characterize their claims in this action as constitutional torts are unavailing. Courts have repeatedly seen through such artful pleadings, and found

---

    meant precisely that - 'all claims.'"); Janicki Logging, 42 F.3d, at 565 ("even if [plaintiff] can point to a somewhat apposite constitutional wrong, that cannot save its Bivens action. The simple fact is that Congress has created [the CDA,] a complete scheme through which [plaintiff] could have obtained all of the damages it now claims.").

claims to be rooted in contract, despite plaintiffs' allegations of due process and other constitutional violations. See, e.g., Evers v. Astrue, 536 F.3d 651, 658 (7th Cir. 2008) ("[T]he characterization or labeling of claims by the pleader is not controlling . . . [plaintiff] cannot escape the precisely drawn remedial framework outlined by the Contract Disputes Act merely by styling his complaint as one for redress of constitutional torts and regulatory violations rather than as one for breach of contract"); Ingersoll-Rand Co. v. United States, 780 F.2d 74, 77 (D.D.C. 1985) ("A plaintiff may not avoid the jurisdictional bar of the CDA merely by alleging violations of regulatory or statutory provisions rather than breach of contract."); J.C. Products, Inc. v. United States, 608 F. Supp. 92, 94 (W.D. Mich. 1984) ("it is difficult to imagine a situation where a party whose contract with a government agency has allegedly been breached, could not assert that the breach constituted arbitrary and capricious agency action and deprivation of property without due process of law.").

In Kesler Enterprises, the plaintiff sought monetary damages, alleging that the government's refusal to grant the plaintiff certain contracts was "retaliatory conduct chilling [plaintiff's] constitutional right to seek redress of grievances." 2010 WL 4641360, at *2. Despite plaintiff's argument that his claims were not contractual because they alleged an unconstitutional motivation for the termination of his contract, the court dismissed the claims, holding that they were adequately addressed by the CDA and that a Bivens action was inappropriate. The court noted that "it would be a simple exercise for contractors to convert a contract claim into a constitutional one by simply characterizing as unconstitutional the contracting officers [sic] motivation for the termination or suspension of a contract," and found that such allegations did not transform plaintiff's claim from a contract dispute subject to the CDA to a Bivens action. Id. at *5.

Similarly, in Evers, plaintiff claimed that the government's termination of his

contract "pinned a badge of infamy on [him]" and tarnished his "good name, reputation, honor and integrity." 536 F.3d at 659. The court dismissed these claims as precluded by the CDA, finding it "apparent that the source of [plaintiff's] dignitary liberty interest is still the contract - he is contesting the propriety of [the government's] termination of his contract by claiming that it adversely affected his reputation." Id. at 659-60; see also Advanced Materials, 1995 WL 25891, at *1-2 (despite contractor's allegations that government officials "conspired to distort the truth, to tarnish plaintiff's reputation, and to force plaintiff out of business, in violation of plaintiff's due process rights," the claims were subject to the CDA as they arose from plaintiff's contractual relationship with the government).

As in Kesler Enterprises and Evers, Plaintiffs' pleadings of constitutional violations in this case cannot disguise the contractual core of their action. The essence of Plaintiffs' claims is that Defendants improperly terminated the three Picatinny Arsenal contracts, and the language of the SAC reinforces that conclusion. (See, e.g., SAC ¶ 40 ("Defendants wrongfully terminated the [Project I] contract for default"); SAC ¶ 68 ("[A]ll three (3) projects were improperly terminated for default."); SAC ¶ 73 (Defendants "improperly terminated MES for default in order to conceal their own defective administration of the three (3) contracts").) Plaintiffs allege that "the impact of [the contract] terminations was permanent injury to MES' reputation and the complete loss of MES as a going concern." (SAC ¶ 82.) Like the plaintiff's allegations in Evers, this allegation makes it "apparent that the source of [plaintiffs' interest] is still the contract." 536 F.3d at 659-60. Additionally, Plaintiffs seek compensatory and punitive damages, and attorneys' fees, which are the "typical contractual damages remedy." Ingersoll-Rand, 780 F.2d at 79.

Plaintiffs' reliance on Navab-Safavi v. Broadcasting Board of Governors, 650 F. Supp. 2d 40 (D.D.C. 2009), is misplaced. The plaintiff in Navab-Safavi, who worked as a

translator for the government, was fired because she had produced and publicized a music video criticizing the war in Iraq. She subsequently brought a claim alleging that federal officials had violated her First Amendment rights, and the court allowed her Bivens action to proceed. The court in Navab-Safavi noted, however, that plaintiff's claims were not based in contract or governed by the CDA because "plaintiff's position is ultimately based not on breach of contract, but on an alleged governmental infringement of constitutional rights which preexisted any contracts." Id. at 68 (internal quotations omitted). Federal officials had punished Navab-Safavi for actions that were entirely unrelated to her government contract -- Navab-Safavi produced the music video as a private citizen, during non-work hours, and without using any government resources, making her First Amendment claim "[unrelated] to the terms of [her] contract." Id. at 67. By contrast, Plaintiffs' claims in this case are wholly bound up with their government contract.

        Plaintiffs' final argument -- that the CDA does not provide them with a statutory remedy, because Safeco has enforced its right to take over Plaintiffs' ASBCA appeals -- is likewise unavailing. Plaintiffs freely chose to enter into indemnity agreements with Safeco, and knew that, in the event of a default, their rights to the Picatinny Arsenal Contracts would be assigned to Safeco. Plaintiffs may not now argue that their voluntary decision to contract with Safeco prevents them from seeking relief under the CDA.

Injurious Falsehood Claim

        Because the Court lacks subject matter jurisdiction over Plaintiffs' Bivens claims, it may not exercise supplemental jurisdiction over Mr. Makhoul's New York state law claim of injurious falsehood, which is accordingly, dismissed. See 28 U.S.C. 1367; Da Silva v. Kinsho Intern. Corp., 229 F.3d 358, 361 (2d Cir. 2000).

CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss the SAC for lack of subject matter jurisdiction. The Clerk of Court is respectfully requested to enter judgment accordingly and close this case. This Memorandum Opinion and Order resolves docket entry no. 26.

SO ORDERED.

Dated: New York, New York
   March 26, 2012

_____
LAURA TAYLOR SWAIN
United States District Judge